CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
SEP 27 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| GREGORY M. MABE, | ) | CASE NO. 4:12CV00052 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's June 12, 2009 protectively-filed applications for a period of disability and disability insurance benefits and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423, and § 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter DENYING the plaintiff's motion for summary judgment, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. (Dkt. No. 6.) Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin hereby is substituted for Michael J. Astrue as the defendant in this action.

In a decision dated February 11, 2011, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since December 5, 2008, his alleged disability onset date.[2] (R. 11.) The Law Judge determined plaintiff's degenerative disc disease and acute trapezius neck strain were severe impairments.[3] (R. 12-13.) He determined that plaintiff's headaches, carpal tunnel syndrome, intestinal problems, and depression were not severe impairments. (R. 12-13.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 14.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a range of sedentary work that accommodates a sit/stand option. (R. 14-20.)

In support of his decision, the Law Judge relied on portions of the testimony of Andrew V. Beale, Ed.D., an impartial vocational expert ("VE"), which were in response to questions premised on the Law Judge's RFC finding. (R. 20-21, 42-44.) Based on this testimony and his determination of plaintiff's RFC, the Law Judge found that plaintiff was incapable of performing his past relevant work. (R. 20.) However, he found that there were other jobs in significant numbers in the local and national economy which plaintiff could perform, including as an

---

[2] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A) (2004). Substantial gainful activity is "work activity that involves doing significant physical or mental activities," and it is typically determined by the amount of a claimant's earnings. *See* 20 C.F.R. §§ 404.1572 and 1574. The sequential evaluation is a five step process used by the Commissioner to evaluate whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). If a claimant is found not disabled at any level prior to the final level, the inquiry is to stop. *Id.* In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that he became disabled prior to the expiration of his insured status, which is March 31, 2013. *See* 20 C.F.R. § 404.131(a); (R. 11, 198.)

[3] A severe impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

assembler, inspector, and packer. (R. 20-21.) Accordingly, the Law Judge concluded that plaintiff was not disabled. (R. 21.)

Plaintiff appealed the Law Judge's February 11, 2011 decision to the Appeals Council. (R. 1-4.) In its October 4, 2012 notice, the Council found no basis to review the Law Judge's decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1-3.) This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Commissioner's final decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff challenges the final decision of the Commissioner on several grounds. First, he argues that the Law Judge's findings that his migraines, alleged schizoaffective disorder, and

3

depressive disorder were not severe impairments are in error. (Dkt. No. 15, at 7, 12-13.)

Further, plaintiff argues that the Law Judge improperly evaluated his complaints of pain and failed to properly assess his credibility. *Id.* at 7-12.

Plaintiff asserts that the severity and frequency of his migraines are documented by the medical record and that, due to their unpredictable nature and frequency, they prevent him from maintaining satisfactory attendance to, and performance of, any work on a normal schedule. (Dkt. No. 15, at 7.) Plaintiff testified that he suffers migraines at least two to three times a week, lasting at least two hours at a time, and that they have not responded to treatment. (R. 32-33, 40-41.) A severe impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). The plaintiff bears the burden of demonstrating that they suffer a severe impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 147 fn5 (1987).

Here, the Law Judge acknowledged that plaintiff has been treated for headaches, but he found that the impairment was not severe, concluding that they had not existed for a continuous period of twelve months, were responsive to treatment, did not require significant medical treatment, or did not result in any continuous exertional or non-exertional functional limitations. (R. 12.) However, he did consider some evidence of plaintiff's treatment for headaches later in the sequential evaluation. (R. 15, 17.) A thorough examination of the record and the Law Judge's review of the evidence lead the undersigned to find that there is substantial evidence supporting his findings. Plaintiff claimed he has suffered a variety of symptoms, including headaches from a concussion and other head and neck injuries arising out of motor vehicle accident on December 5, 2008. (R. 253-256, 267, 293.) Yet, there is only minimal evidence in the record demonstrating that he was treated for headaches.

4

In July 2010, he complained of migraine headaches occurring one to two times a week and normal headaches daily. (R. 333-335.) In August 2010, plaintiff stated that he was suffering headaches everyday for which he received an occipital trigger injection.[4] (R. 360-361.) There is no other evidence of his seeking treatment specifically for headaches between December 2008 and July 2010 or anytime after August 2010. Now, plaintiff has been diagnosed with an impairment producing neck pain, and the Law Judge fully accounted for that when he found plaintiff's degenerative disc disease and acute trapezius neck strain to be severe impairments. (R. 12-13.) Upon a thorough review of the evidence of record, and finding no medical opinion evidence delineating plaintiff's headaches as an impairment that is expected to last twelve months or longer, there is substantial evidence supporting the Law Judge's finding that plaintiff's headaches/migraines fail to rise to the level of a severe impairment.

Plaintiff also contends that his depression and schizoaffective disorder are severe impairments. He notes that he received mental health treatment from Don Tessmann, M.D., who diagnosed plaintiff as suffering from both mental conditions, and he provided a Global Assessment of Functioning score of 55, which indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.[5] (Dkt. No. 15, at 12-13.) In his decision at Step 2 of the sequential evaluation, the Law Judge acknowledged that plaintiff had received therapy for depression, but he noted that it was only for about a month between March and April 2010. (R. 12-13.) He found that any mental impairment plaintiff did suffer was not severe because it had not required psychiatric hospitalizations, and it must have been responsive to

---

[4] The provider notes here are almost illegible. They appear to indicate that plaintiff has one or two particularly bad headaches each week since the accident. (R. 360.) However, that note was based entirely on the history plaintiff provided the medical provider, and its credibility is subject to assessment on a claim for benefits.

[5] Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32–34 (4th ed. 2000)

treatment because plaintiff rarely sought out treatment. *Id.* Furthermore, he concluded from the medical records that plaintiff had no more than a mild limitation in the relevant four broad functional areas, and that he experienced no extended episodes of decompensation.[6] (R. 13.)

The record reflects that plaintiff sought and received treatment for his mental health complaints. No psychological symptoms or abnormal mood and affect were noted at the time of his accident in December 2008, and a January 12, 2009 treatment note indicated plaintiff displayed no psychological symptoms, and his judgment, orientation, memory, mood, and affect were found age appropriate. (R. 253, 289-290.) However, four days later, plaintiff reported that he was "extremely stressed" since the accident, and complained of anxiety, depression, sleep trouble, memory loss, and confusion. (R. 293-294.) No psychological findings were made by the treatment provider, and no treatment was prescribed. (R. 295.) A year and two months later, in March 2010, plaintiff complained of continued insomnia and weight fluctuations, and, at that time, he was diagnosed as suffering depression with a history of insomnia. (R. 329.) He was prescribed refills of citalopram and started on trazodone. (R. 330.)

In March 2010, plaintiff began mental health therapy. (R. 352-356.) His complaints were wide-ranging and included, depression, anxiety, unexplained frequent changes in mood, problems with sleep or appetite, hearing voices or seeing strange visions, very fast thoughts or feeling sped up, intense anger, difficulty with memory, concentration, or decision making; reoccurring thoughts of death, compulsive behaviors, difficulties at work and with his spouse/partner, and other physical and financial difficulties. (R. 355.) Plaintiff reported that he was stressed over work/school, isolation, and self-judgment about not belonging, and he was observed to have "a lag" in his response time. (R. 352.) He revealed that he had some thoughts of suicide and of harming someone years before, after his divorce, but not recently. (R. 352,

---

[6] *See* 20 C.F.R. § 404.1520a.

355.) He also stated that he had no difficulties with daily living skills. (R. 355.) His mood had last been reported as normal. (R. 352.)

Plaintiff underwent three therapy sessions. (R. 348.) In his third session, plaintiff was anxious, and he revealed difficulties interacting with family and others, anger, and paranoia. *Id.* He was prescribed Zoloft and encouraged to take it once a day for a week. *Id.* Plaintiff was also evaluated by Dr. Tessmann, who found him with a blunt affect and noted that plaintiff paused before answering questions. (R. 350.) Plaintiff revealed that he had a family history of depression and schizophrenia,[7] he reported he was depressed with difficulties sleeping, and he stated that he was "maybe hearing some voices" at times. *Id.* However, there were no indications of suicidal or homicidal ideation, plaintiff's intellectual functioning was normal, and there were no obvious deficits in his recent or remote memory. *Id.* Dr. Tessmann diagnosed "rule out" schizoaffective disorder and depressive disorder, and he assigned plaintiff a GAF score of 55. (R. 350-351.) Dr. Tessmann continued plaintiff's medications and indicated that plaintiff could return as needed and should continue with individual therapy. (R. 350.) There is no evidence of further mental health treatment, and plaintiff's mental status was rated normal in the report of a July 2010 physical examination. (R. 333-335.)

Neither the Law Judge nor the State agency medical experts seem to have addressed Dr. Tessmann's evaluation. (R. 12-13, 17, 160-161, 199-201.) However, this evaluation does not trump the Law Judge's rationales which substantially support his findings. As the Law Judge found, evidence of treatment for plaintiff's mental health is very limited. Though plaintiff complained of anxiety, depression, weight loss, sleep trouble, memory loss, and confusion as early January 2009, he was not diagnosed as suffering any mental impairment until March 2010,

---

[7] There is no evidence that plaintiff had any family history of mental impairments. (R. 289-295.)

7

more than a year after his onset date. Though he attended three therapy sessions and received a psychological evaluation, there is no evidence that plaintiff sought treatment again for any mental impairment after April 2010. This limited evidence does not establish that plaintiff suffers a mental impairment which significantly limits his ability to do basic work activities for a period of at least twelve months. Moreover, Dr. Tessmann offered what can be considered "rule out" diagnoses, certainly inferring that further examination was necessary to accurately evaluate plaintiff's alleged impairment. Plaintiff's claimed limitations are fairly minimal, focusing instead on his pain. (R. 39-40, 139-149, 186-196.) Accordingly, the Law Judge's finding that none of plaintiff's claimed mental impairments were severe, as that term is defined by the regulations, is supported by substantial evidence.

Finally, plaintiff argues that the Law Judge improperly evaluated his complaints of pain, and that his decision not to fully credit his complaints is not supported by the substantial evidence. (Dkt. No. 15, at 7-12.) He offers that his complaints of pain are well documented in the medical record, and he asserts that there is objective medical evidence supporting the basis for those complaints. *Id.* at 9-10. Plaintiff contends that the Law Judge did not fully account for all available evidence, and that he improperly took into account the records relating to his claim for unemployment benefits in discounting his credibility. *Id.* at 10-12.

As the Law Judge found, there is no question that the impairments he determined to be severe reasonably could be expected to cause pain and produce other symptoms and limitations. Imaging evidence revealed objective changes in plaintiff's cervical spine, including stenosis, face joint hypertrophy, and neural foramen narrowing, all ranging from mild to moderate. (R. 273-274, 309-314, 358-359.) Plaintiff further has complained of severe neck and back pain and arm numbness. (R. 273-274, 289-295, 304-307, 322, 329-330, 333-335, 358-359, 360-361.)

The Law Judge considered this evidence when determining plaintiff's RFC and assessing his credibility. (R. 15-20.)

In spite of its volume, the Law Judge did not give plaintiff's allegations full weight, and he provided several reasons for finding plaintiff's allegations not to be entirely credible. He found that: (1) the medical evidence did not support plaintiff's allegations regarding the severity of his limitations; (2) there were significant gaps in plaintiff's treatment record which is inconsistent with plaintiff's allegations of disabling impairments; (3) plaintiff failed to follow-up on recommendations made by his treatment providers; (4) plaintiff worked during the relevant period; and (5) plaintiff received unemployment benefits after his disability onset date. (R. 18-19.)

In making a credibility determination, a Law Judge must consider all relevant evidence in the record. *See* SSR96–7p, 1996 WL 374186, at *5 (July 2, 1996). A reviewing court should give great weight to the Law Judge's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the Law Judge's conclusions. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984). The Law Judge may consider gaps in plaintiff's treatment as indicating an inconsistency between the level of complaints and the frequency of treatment. *See* SSR96–7p, 1996 WL 374186, at *7 (July 2, 1996). Failure to follow the recommended course of treatment also may be considered, to the extent the claimant has not provided good reasons for such failure. *Id.* at 7-8; *see also Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). Finally, a claimant's work history during the relevant period may be considered, even if it does not rise to the level of substantial gainful activity, so long as it relevant to whether the claimant is capable of doing more work than the he/she asserts. *See* 20 C.F.R. § 404.1571.

Reasoning minds may differ in this case over the severity of plaintiff's impairments according to the evidence in the record.[8] The evidence cited by the Law Judge, when considered in combination, strongly supports his finding that plaintiff's allegations concerning the intensity, persistence, and limiting effects of his impairments were not entirely credible. Plaintiff's treatment record is not extensive and includes several gaps. There is no evidence that plaintiff sought treatment between January and June 2009 (R. 297-300, 304-306), between June 2009 and January 2010 (R. 322), between April and July 2010 (R. 348, 333-335), or after September 2010 (R. 358-359). There is also no evidence that plaintiff sought out physical therapy despite recommendations from his treatment providers or continued his mental therapy. (R. 274, 306, 350.) Plaintiff has not offered any explanation for failing to seek treatment or for his failure to comply with his treatment plan. As a result, the treatment record conflicts with his allegations of constant disabling pain.

Plaintiff's work history also supports a finding that he is not as limited as he alleges. Despite claiming that he became disabled in December 2008, plaintiff continued working through the second quarter of 2009, including work at the level of substantial gainful activity during the second quarter, and only stopped working when he was laid off along with the bulk of the company's employees. (R. 29-31, 122-125.) Plaintiff began working again in the second quarter of 2010. (R. 122-125.) Moreover, plaintiff applied for and received unemployment

---

[8] The imaging evidence confirms that plaintiff's suffers from spinal impairments as a result of his car accident in December 2008. (R. 273-274, 309-314, 358-359.) Plaintiff has displayed weakness in his right upper extremity on physical examination findings, but he claimed that it was present before the accident, likely arising from a prior arm facture. (R. 273.) Plaintiff has also demonstrated pain and limited range of motion in his neck, tenderness, and mild hyper-reflexive tendon reflexes. (R. 273, 304-306, 333.) Plaintiff also alleges suffering very severe cervical pain as well as numbness in his arms. (R. 305-306, 329, 333.) His range of motion was mildly to moderately limited (R. 304), and his MRI revealed borderline to mild stenosis, mild to moderate neural foramen narrowing, and facet joint hypertrophy at different disc heights. (R. 358.)

benefits in the fourth quarter of 2009 and the first half of 2010. (R. 122-125.) Though plaintiff contends that the Law Judge impermissibly relied on this evidence, courts of this Circuit have considered that this evidence is relevant to a credibility determination.[9] Applying for or receiving unemployment benefits requires a plaintiff to affirm that he is ready and willing to work, which is inconsistent with the definition of disability under the Social Security Act. *See Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998).

As the Law Judge found, plaintiff spent up to a year and a quarter of his alleged disability period either working or representing himself as capable of working. While the undersigned sympathizes with plaintiff's need to support himself, this evidence undermines the credibility of his claim for disability, and, together with the Law Judge's other findings, provides substantial support for the Law Judge's credibility determination.

For all these reasons, it is RECOMMENDED that an Order enter DENYING the plaintiff's motion for summary judgment, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the

---

[9] *See Clark v. Astrue*, No. 3:12cv00122, 2012 WL 6728441, at *3 (W.D.N.C. Dec. 28, 2012); *Brannon v. Astrue*, No. 1:11-1568, 2012 WL 3842572, at *10-11 (D.S.C. Sept. 4, 2012); *Mealy v. Astrue*, No. 3:10cv848, 2012 WL 691580, at *5 (E.D.Va. Feb. 16, 2012). *See also Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998).

undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

Sept 27, 2013
Date