IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| GREGORY M. MABE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:12-cv-00052 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | By: Hon. Jackson L. Kiser |
| Acting Commissioner of Social Security, | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

Before me is the Report and Recommendation ("R & R") of the Honorable B. Waugh Crigler, recommending that I deny Plaintiff's Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, and dismiss this case from the docket of the Court. [ECF No. 18.] The R & R was filed on September 27, 2013, and Plaintiff filed timely Objections on October 11, 2013. [ECF No. 19.] The Commissioner offered no response within the subsequent fourteen (14) day period, and the matter is now ripe for review. *See* Fed. R. Civ. P. 72(b)(2). After careful review and consideration, and for the reasons stated below, I will **OVERRULE** Plaintiff's Objections, **ADOPT** Judge Crigler's R & R, **DENY** Plaintiff's Motion for Summary Judgment, **GRANT** the Commissioner's Motion for Summary Judgment, and **DISMISS** this case from the active docket of the Court.

I.  **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On December 5, 2008, Plaintiff Gregory M. Mabe ("Plaintiff") was involved in a severe head-on collision during which he was ejected from the vehicle. (R. at 31−32, 127, 252−58, 273.) Plaintiff reported injuries to his neck and spine, numbness in his hands, headaches, and a herniated disc. (R. at 127.) On June 12, 2009, he filed applications for a period of disability

insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act ("the Act"), respectively, alleging the date of the accident as the onset date of his disability. (R. at 113−20); *see* 42 U.S.C. §§ 401−434, 1381−1383(f) (2012). Based on his application and medical reports, the Commissioner initially denied his claims for benefits on August 11, 2009, and again upon reconsideration on April 27, 2010. (R. at 49−54, 58−61.)

Before his accident, Plaintiff was engaged in skilled work as a fabrication machine operator. (R. at 42, 128.) In his application for benefits, Plaintiff alleged that he could no longer lift after his accident because of the resulting numbness in his hands and arms, had a limited range of motion in his neck, and had to stop working due to his injuries. (R. at 49−54, 58−61.) Nevertheless, Plaintiff continued to work for Worley Machine Enterprises after his accident. (R. at 30−32, 122−25.) He worked through the second quarter of 2009, until he was laid off along with the bulk of the company's employees. (*Id.*) During the fourth quarter of 2009 and the first half of 2010, Plaintiff also received unemployment benefits. (R. at 122−25.) In the second quarter of 2010, he was again briefly employed with Worley Machine Enterprises. (R. at 124.) During these time periods, Plaintiff sporadically sought treatment with a number of treatment providers for his physical and mental health. (R. at 274, 297−300, 304−06, 322, 333−35, 348, 350, 358−59.)

After his application for benefits was denied initially and upon reconsideration, Plaintiff requested that the Social Security Administration conduct a hearing to assess whether he was disabled within the meaning of the Social Security Act. (R. at 24−44.) During the hearing, held via video conference on December 6, 2010, Administrative Law Judge Thomas R. King ("the ALJ") solicited testimony from Plaintiff and a vocational expert, Dr. Andrew Beale. (*Id.*) In a decision dated February 11, 2011, the ALJ determined that Plaintiff was not disabled within the

meaning of the Act. (R. at 9−22.) Although the ALJ determined that Plaintiff's degenerative disc disease and acute trapezius neck strain rose to the level of severe impairments, he concluded Plaintiff did not suffer from an impairment or combination of impairments which met or were medically equal to a listed impairment. (R. at 12−14); *see* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (2012). Further, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work that accommodates a sit/stand option, and had vocational opportunities that include work as an assembler, an inspector, and a packer. (R. at 14−21.)

On April 4, 2011, Plaintiff petitioned the Appeals Council for a review of the hearing decision. (R. at 110−11.) The Appeals Council found that the arguments Plaintiff advanced did not provide a basis for changing the ALJ's decision, and denied Plaintiff's request on October 4, 2012. (R. at 1−4.) Accordingly, the decision of the ALJ became the final decision of the Commissioner. (R. at 1.)

Plaintiff filed suit in this Court on November 21, 2012. (Comp. [ECF No. 3].) Pursuant to 28 U.S.C. § 636(b)(1)(B), I referred the case to Magistrate Judge B. Waugh Crigler for consideration. (Order, June 3, 2013 [ECF No. 11].) Thereafter, Plaintiff and the Commissioner filed cross-motions for summary judgment. (*See* Pl.'s Mot. Summ. J. [ECF No. 14]; Def.'s Mot. Summ. J. [ECF No. 16].) Plaintiff challenged the final decision of the Commissioner on several grounds, arguing first that the ALJ erred when he found that Plaintiff's alleged migraines, schizoaffective disorder, and depressive disorder were not severe impairments. (Mem. Supp. Pl.'s Mot. Summ. J. 7, 12−13.) Further, Plaintiff argued that the ALJ improperly evaluated his complaints of pain, and failed to assess properly his credibility. (*Id.* at 7−12.)

On September 27, 2013, Judge Crigler filed his Report and Recommendation, recommending that I deny Plaintiff's Motion for Summary Judgment, grant the Commissioner's

Motion for Summary Judgment, and dismiss this case from the docket of the Court. (R & R 1.) Judge Crigler concluded that substantial evidence exists to support the findings of the ALJ. (*Id.* at 4−11.) He found that Plaintiff's medical records conflict with his allegations of constant disabling pain, and determined that the ALJ acted properly when he determined that Plaintiff's complaints were not entirely credible. (*Id.* at 8−11.)

On October 11, 2013, Plaintiff filed timely Objections to the R & R. (*See* Obj. to R & R Issued by U.S. Mag. Judge B. Waugh Crigler, Oct. 11, 2013 [ECF No. 19] ("Pl.'s Obj.").) Plaintiff argues that Judge Crigler erred when he concluded that substantial evidence exists to support the findings of the ALJ. Specifically, Plaintiff contends that his alleged headaches, migraines, depression, and schizoaffective disorder constitute severe impairments. (*Id.* at 1−2.) Further, he argues that the state agency medical experts' and the ALJ's failure to address Dr. Tessmann's evaluation amounts to reversible error, and asserts that the ALJ improperly assessed Plaintiff's credibility. (*Id.* at 2−4.) The Commissioner did not reply to these Objections, and the matter is now ripe for review.

## II. <u>STANDARD OF REVIEW</u>

Congress has limited the judicial review I may exercise over decisions of the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. *See* 42 U.S.C. § 405(g) (2010); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In

other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545 (2012); *see Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir. 1984) (noting that it is the role of the ALJ, not the vocational expert, to determine disability). The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527, 416.927 (2012). Unless the decision lacks substantial evidence to support it, the ultimate determination of whether a claimant is disabled is for the ALJ and the Commissioner. *See id.* §§ 404.1527(e), 416.927(e); *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. *Laws*, 368 F.2d at 642. In reviewing the evidence, I must not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the Secretary.[1]" *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589).

### III. DISCUSSION

This Court reviews *de novo* any portion of the Magistrate Judge's recommendation to which a party objects. Fed. R. Civ. P. 72(b)(3). The majority of Plaintiff's Objections, however, simply reiterate arguments he made in support of his Motion for Summary Judgment. For example, in his Motion, Plaintiff argued that "the ALJ's decision that the plaintiff's

---

[1] Or the secretary's designate, the ALJ. *See Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

schizoaffective disorder and depressive disorder are not severe impairments is not supported by substantial evidence." (Mem. Supp. Pl.'s Mot. Summ. J. 13 [ECF No. 15].) In his Objections to the R & R, Plaintiff now argues that the "[R & R] erroneously concludes that substantial evidence exists to support the ALJ's decision that the plaintiff's depression and schizoaffective disorder do not rise to the level of severe impairments." (Pl.'s Obj. 2.) Although I consider such recycled arguments to be improper,[2] I will address each of Plaintiff's objections in turn.

### A. *Plaintiff's Headaches and Migraines*

Plaintiff first argues that Magistrate Judge Crigler erred when he found that substantial evidence exists to support the ALJ's finding that Plaintiff's headaches and migraines do not rise to the level of a severe impairment. (Pl.'s Obj. 1–2.) A "severe impairment" is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). Plaintiff bears the burden of demonstrating that he suffers a severe impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 147 n.5 (1987). After reviewing the medical records, I agree with the ALJ's conclusion that Plaintiff has not satisfied his burden.

---

[2] Mere repetition of those arguments made to and rejected by Magistrate Judge Crigler is generally not sufficient to state an objection under Federal Rule of Civil Procedure 72. As has been stated before:

> The issues that Plaintiff raises in her general objection have already been addressed by Magistrate Judge Crigler when they were before him in Plaintiff's summary judgment brief. Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act."

*Veney v. Astrue*, 539 F. Supp. 2d 841, 845–46 (W.D. Va. 2008) (quoting *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).

Plaintiff contends that the unpredictable frequency and severity of his migraines render him unable to maintain attendance and satisfactory performance at work eight hours per day and five days per week. (Pl.'s Obj. 1–2.) The ALJ acknowledged that Plaintiff has been treated for headaches, but reasoned they were non-severe because "they did not exist for a continuous period of twelve months, were responsive to medication/treatment, did not require significant medical treatment or did not result in any continuous exertional or non-exertional functional limitations." (R. at 12.) While the ALJ concluded that Plaintiff's headaches and migraines did not constitute a severe impairment, he nevertheless considered their treatment as part of his assessment of Plaintiff's residual functional capacity. (R. at 15, 17.)

In essence, Plaintiff is objecting to the ALJ's resolution of conflicting evidence. On the one hand, Plaintiff testified that he suffers from migraines at least two to three times a week, that they last at least two hours at a time, and that they have not responded to treatment. (R. at 32–33, 40–41.) Medical records indicate that he complained of frequent headaches in July and August 2010, and that he received an occipital trigger injection as treatment. (R. at 33335, 360–61.) On the other hand, as Judge Crigler pointed out, there is no other evidence of Plaintiff seeking treatment specifically for headaches between December 2008 and July 2010, or at any point after August 2010. (R & R 5.) Further, there is no medical opinion evidence delineating Plaintiff's headaches as a separate impairment that is expected to last twelve months or longer.

Plaintiff's objection amounts to an argument that the ALJ improperly resolved conflicting evidence. It is the exclusive province of the Commissioner, however, to resolve such conflicts. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). My discretion in this case is limited to review for substantial evidence, and there is substantial evidence to support the ALJ's conclusion with respect to Plaintiff's headaches and migraines. Accordingly, I must affirm the final

decision of the Commissioner. The ALJ properly found that Plaintiff did not adequately demonstrate that his headaches and migraines constitute a separate and severe impairment.

### B. *Plaintiff's Depression and Schizoaffective Disorder*

Plaintiff next objects to Judge Crigler's conclusion that substantial evidence exists to support the ALJ's finding that Plaintiff's alleged depression and schizoaffective disorder do not constitute a severe impairment. (Pl.'s Obj. 2.) Again, Plaintiff is essentially objecting to the Commissioner's resolution of a conflict in the evidence. So long as the final decision of the Commissioner is supported by substantial evidence, I am not at liberty to re-weigh the evidence. *See Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). The crux of Plaintiff's argument seems to be that Dr. Tessmann's opinion, along with Plaintiff's other medical records, present such a compelling case that it amounts to reversible error for the ALJ to have found that Plaintiff's alleged depression and schizoaffective disorder were not a severe impairment. I find this argument unpersuasive.

Plaintiff's medical records do not indicate that he has been diagnosed with any mental health conditions which would "significantly limit[] [his] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c) (2012). In his written decision, the ALJ concluded that Plaintiff's depression was non-severe because he has not required any psychiatric hospitalizations, has been responsive to treatment, and because Plaintiff has required or sought out very little treatment. (R. at 12–13.) The disability regulations set out four broad functional areas which are to be reviewed when evaluating claims of mental disorders.[3] The ALJ addressed each of the four, and found that Plaintiff suffers only mild limitation in the areas of daily living,

---

[3] *See* 20 C.F.R. § 404.1520a (2011).

social functioning, and concentration, and has not experienced any episodes of decompensation. (R. at 13.)

Plaintiff exhibited no psychological symptoms or abnormal mood and affect at the time of his accident in December 2008, and the treatment notes from his mental status exam on January 12, 2009, indicate that Plaintiff's judgment, insight, orientation, memory, mood, and affect were all age-appropriate. (R. at 253, 289–90.) On January 16, 2009, Plaintiff reported that some of the specific symptoms of his physical injuries sustained in the automobile accident "distressed him greatly," and complained of anxiety, depression, sleep trouble, memory loss, and confusion. (R. at 293–94.) The treatment provider made no psychological findings, and did not prescribe any treatment for concerns related to Plaintiff's mental health. (R. at 295.)

In fact, Plaintiff's only documented mental health treatment is confined to a period of approximately one month. On March 9, 2010, one year and three months after his alleged onset date, Plaintiff was diagnosed as having depression with a history of insomnia, and started on the prescription drug Trazodone. (R. at 329–30.) Between March and April of 2010, Plaintiff underwent at least three therapy sessions with a licensed professional counselor, Darwin Honeycutt.[4] (R. at 347–56.) Records from these sessions indicate that Plaintiff's mood ranged from normal to anxious, and that his stressors included money, work/school, isolation, and self-judgments about not belonging. (R. at 348, 352.) During this time, Plaintiff was receiving unemployment after having been laid off from his job at Worley Machine Enterprises, and had not yet returned to work. (R. at 122–25.) His complaints in these sessions were wide -ranging, and included: depression; anxiety; unexplained frequent changes in mood; problems with sleep or appetite; hearing voices or seeing strange visions; very fast thoughts or feeling "speeded up;" intense anger; difficulty with memory, concentration, or decision making; reoccurring thoughts

---

[4] Plaintiff met with Mr. Honeycutt on March 11, March 24, and April 15, 2010. (R. at 347−49, 351−56.)

of death; compulsive behaviors; work problems; problems with spouse/significant other; health/physical problems; and financial problems. (R. at 355.) Nevertheless, Plaintiff reported that he did not have any difficulty with his daily living skills. (*Id.*)

On April 7, 2010, Dr. Don Tessmann evaluated Plaintiff's mental health. (R. at 350−51.) Dr. Tessmann observed that Plaintiff had a blunt affect, but his intellectual functioning was estimated in the normal range with no obvious deficits in recent or remote memory. (R. at 350.) Plaintiff indicated that he felt depressed and isolated, had trouble sleeping, and has extended family members with schizophrenia and depression.[5] (*Id.*) He reported times when he was "maybe hearing some voices," and noted that his current medications, Trazodone and Celexa, were ineffective and made him feel "funny." (*Id.*) At the time, Plaintiff also indicated that he was about to lose his unemployment coverage.

Dr. Tessmann diagnosed Plaintiff with "rule out" schizoaffective and depressive disorder, and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 55.[6] (R. at 350−51.) Dr. Tessmann changed Plaintiff's prescription to Zoloft, noted that he could return as needed, and recommended that he continue with his individual therapy. (R. at 350.) Plaintiff returned to therapy with Mr. Honeycutt only once, on April 15, 2010, where he appeared anxious. (R. at 348.) The therapist noted that Plaintiff had not been properly taking his medication,[7] explained to him the expected benefits of adhering to the prescribed treatment plan, and urged Plaintiff to take his medicine. (R. at 348−49.) There is no evidence of any further

---

[5] There is no evidence of any family history of mental impairment. (R. at 289−95.)

[6] A GAF Score of 55 corresponds to moderate symptoms or moderate difficulty in social, occupational, or school functioning. Am. Psychiatrics Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32−34 (4th ed. 2000).

[7] Dr. Tessman prescribed 100mg of Zoloft once a day for a week, and then twice a day. (R. at 351.) When he met with his therapist a week later, Plaintiff revealed he had taken only one tablet. (R. at 348.)

mental health treatment, and Plaintiff's mental health status was rated normal during his July 2010 physical examination. (R. at 333−35.)

It is true that neither the state agency medical experts nor the ALJ seem to have directly addressed Dr. Tessmann's evaluation.[8] (R. at 12−13, 17, 160−61, 199−201.) What Plaintiff fails to demonstrate, however, is how Dr. Tessmann's evaluation undercuts the substantial evidence that supports the findings of the Commissioner. It is undisputed that Plaintiff never required psychiatric hospitalization, and his medical records reveal only a few brief periods of time when he required or sought out any treatment for his mental health. Moreover, the ALJ could very reasonably have concluded that once Plaintiff began adhering to Dr. Tessmann's prescribed treatment plan, Plaintiff was responsive to the treatment. After all, the session in which Dr. Tessmann evaluated Plaintiff and adjusted his medication is one of the last documented instances of Plaintiff seeking treatment for his mental health in the Record. Further, as Judge Crigler noted, Dr. Tessmann offered only "rule out" diagnoses, implying that further examination was necessary to accurately evaluate Plaintiff's alleged mental impairment.

The Record contains substantial evidence to support the ALJ's determination that Plaintiff does not suffer a mental impairment which significantly limits his ability to do basic work activities for a period of at least twelve months. Plaintiff did not initially complain of the alleged mental health impairments until over a year after his disability onset date, and there is no

---

[8] The Commissioner initially denied Plaintiff's claims for benefits on August 11, 2009. (R. at 49−54.) Since Dr. Tessmann did not evaluate Plaintiff until April 7, 2010, (R. at 350−51), the earliest point at which his evaluation could have been considered was during the Commissioner's reconsideration of his claims, dated April 27, 2010. (R. at 58−61.) Regardless of whether the evidence existed during the period on or before the Commissioner's decision, *see Reichard v. Barnhart*, 285 F.Supp.2d 728, 733 (S.D.W.Va. 2003), "[e]vidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc). Therefore, even if the evaluation was not considered at every stage of the proceeding, the relevant question is whether there is a reasonable probability that Dr. Tessmann's evaluation would have resulted in a different outcome.

evidence that Plaintiff sought treatment again after April 2010. I find that the ALJ properly considered Plaintiff's mental limitations in rendering his decision. There is substantial evidence to support the ALJ's conclusion that Plaintiff's alleged depression and schizoaffective disorder do not constitute a severe impairment within the meaning of the Act, and accordingly I affirm the final decision of the Commissioner.[9]

### C. Plaintiff's Complaints of Pain and the ALJ's Credibility Assessment

Finally, Plaintiff objects to Judge Crigler's determination that the ALJ properly evaluated Plaintiff's complaints of pain, and argues that substantial evidence does not support the ALJ's conclusion that Plaintiff is not credible. (Pl.'s Obj. 24.) When assessing a claimant's credibility, the ALJ must consider all relevant evidence in the record, and a reviewing court should give great weight to the ALJ's determination. SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996); *see Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). In this case, the ALJ provided several reasons for finding Plaintiff's allegations not to be entirely credible. He found: (1) the medical evidence did not support Plaintiff's allegations regarding the severity of his limitations; (2) there were significant gaps in Plaintiff's treatment record, which is inconsistent with Plaintiff's allegations of disabling impairment; (3) Plaintiff failed to follow-up on recommendations made by his treatment providers; (4) Plaintiff worked during the relevant period; and (5) Plaintiff received unemployment benefits after his disability onset date. (R. at 18−19.) Plaintiff argues that his gaps in treatment, failure to obtain physical therapy, post-onset

---

[9] In his objection, Plaintiff also argues that "the ALJ's failure to properly consider the plaintiff's mental impairments impact in his ultimate residual functional capacity findings [sic]." (Pl.'s Obj. 2.) Plaintiff did not develop the objection any further beyond this one conclusory statement. Further, for the reasons stated above, I disagree with the argument's premise that the ALJ failed to properly evaluate Plaintiff's mental impairments. Accordingly, I find that the objection is both improper and without merit, and it will not be addressed further.

date employment, and receipt of unemployment benefits should not be grounds to discount his credibility. (Pl.'s Obj. 3–4.)

### i. Gaps in Plaintiff's Treatment and the Failure to Obtain Physical Therapy

With respect to the gaps in his treatment and his failure to obtain therapy, Plaintiff contends that he was financially unable to obtain consistent treatment. (*Id.* at 3.) In support of this argument, he points to evidence that he had to seek treatment at two different free clinics for his physical and mental impairments. Plaintiff received treatment for his physical impairments from the Caring Hearts Free Clinic of Patrick County, and for his mental impairments from Piedmont Community Services. (R. at 332-41, 347–62.) Since this demonstrates that he was unable to afford consistent treatment, he argues, the gaps in his treatment and his failure to obtain therapy should not weigh against his credibility.

In the Fourth Circuit, the law provides that a "claimant may not be penalized for failing to seek treatment [he] cannot afford." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). At the same time, however, the Commissioner has indicated that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996). After reviewing the evidence, I must agree with the ALJ that the "kind of behavior [Plaintiff has exhibited] is not consistent with the types of disabling impairments [Plaintiff] alleges." (R. at 19.)

There are numerous and significant gaps in Plaintiff's treatment history. There is no evidence that Plaintiff sought treatment between January and June of 2009 (R. at 297–300,

304−06,) between June 2009 and January 2010 (R. at 322,) between April and July 2010 (R. at 348, 333-35,) or after September 2010 (R. at 358-59 ). Despite recommendations from his physicians (R. at 274, 306,) there is no evidence that Plaintiff ever sought physical therapy. Plaintiff did not offer any explanation for his failure to seek treatment or comply with his treatment plan, and only later argued that he was financially unable to do so.

The Record in this case demonstrates that Plaintiff did, in fact, have access to free or low-cost medical services. (R. at 332−41, 347−62.) Plaintiff did not present any evidence to suggest that his access to the free clinics was limited in any way. If Plaintiff had exhausted the availability of the clinics, evidence to that effect should have been presented. In its absence, there is no ascertainable reason why Plaintiff could not have returned to the free clinics for treatment. Regardless of his financial resources, the evidence suggests that Plaintiff simply did not take advantage of the community resources available to him. As a result, there is substantial evidence to support the ALJ's finding that Plaintiff's gaps in treatment and failure to obtain therapy render his complaints less than credible.

### ii. Post-Onset Date Employment and the Receipt of Unemployment Benefits

As recently as the second quarter of 2010, Plaintiff engaged in work activity after the alleged onset date of his disability.[10] (R. at 124.) In addition, Plaintiff applied for and received unemployment benefits from approximately October 2009 until June 2010. (R. at 122−25.) While neither factor is an absolute bar to the receipt of disability benefits, the ALJ considered both in his assessment of Plaintiff's credibility. (R. at 19.) Plaintiff argues that there is nothing in the Social Security regulations to prevent an individual from concurrently receiving Social Security disability benefits and unemployment benefits, and that he had been hopeful his

---

[10] The work activity at issue did not constitute disqualifying substantial gainful activity. (R. at 19.)

condition would improve after returning to work. (Pl.'s Obj. 3.) I find neither argument to be persuasive.

A claimant's work history during the relevant period may be considered, even if it does not rise to the level of substantial gainful activity, so long as it is relevant to whether the claimant is capable of doing more work than he or she asserts. 20 C.F.R. § 404.1571. Despite claiming that he became disabled in December 2008, Plaintiff continued working through the second quarter of 2009, including work at the level of substantial gainful activity during the second quarter, and only stopped working when he was laid off along with the bulk of Worley Machine Enterprises' employees. (R. at 29-31, 122−25.) In addition , Plaintiff began working again in the second quarter of 2010. (R. at 12-25.) The ALJ properly considered this history of work activity and found that it "indicate[s] that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (R. at 19.)

With respect to the receipt of unemployment benefits, Plaintiff is correct that nothing in the Social Security regulations necessarily precludes an individual from concurrently receiving social security disability and unemployment benefits. While the receipt of unemployment benefits generally entails holding oneself out as willing and able to work, in the Fourth Circuit the "receipt of unemployment compensation does not in itself prove ability to work." *Lackey v. Celebrezze*, 349 F.2d 76, 79 (4th Cir. 1965). Nevertheless, courts of this Circuit have held that it is proper to consider the inherent inconsistency between the receipt of unemployment benefits and an application for Social Security disability benefits when assessing an individual's credibility.[11] In this case, the ALJ properly considered the receipt of unemployment benefits as

---

[11] *See, e.g.*, *Propst v. Colvin*, No. 5:12cv089, 2013 WL 5348279, at *7 (W.D. Va. Sept. 23, 2013); *Clark v. Astrue*, No. 3:12cv00122, 2012 WL 6728441, at *3 (W.D.N.C. Dec. 28, 2012); *Brannon v. Astrue*, No. 1:11−1568−SVH, 2012 WL 3842572, at *10−11 (D.S.C. Sept. 4, 2012); *Shrewsbury v. Astrue*, No. 7:11cv229, 2012 WL 2789719, at *3 (W.D. Va. July 9, 2012); *Mealy v. Astrue*, No. 3:10cv848−HEH,

just one of several factors that informed his ultimate assessment of Plaintiff's credibility. (R. at 19.) Accordingly, I must affirm the final decision of the Commissioner.

## IV. CONCLUSION

There is substantial evidence to support the final decision of the Commissioner, and I find that the Record is otherwise free of clear error. Therefore, I will **OVERRULE** Plaintiff's Objections, **ADOPT** Judge Crigler's R & R, **DENY** Plaintiff's Motion for Summary Judgment, **GRANT** the Commissioner's Motion for Summary Judgment, and **DISMISS** this case from the active docket of the Court.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record and to Magistrate Judge Crigler.

Entered this 15th day of November, 2013.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE

---

2012 WL 691580, at *5 (E.D. Va. Feb. 16, 2012), *adopted*, 2012 WL 688490 (E.D. Va. Mar. 2, 2012); *Penick v. Astrue*, No. 3:08CV549, 2009 WL 3055446, at *5 (E.D. Va. Sept. 23, 2009); *Byrd v. Astrue*, No. 5:07cv00097, 2008 WL 4734935, at *4 & n.11 (W.D. Va. Oct. 28, 2008), *adopted*, 2008 WL 4933602 (W.D. Va. Nov. 18, 2008); *see also Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) (finding that a "claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work" is a relevant factor in assessing claimant's credibility); *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) ("We have held that the acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability.").